IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| MICHAEL N. WOOD,<br>  Plaintiff, | ) <br> ) <br> ) | |
| v. | ) <br> ) | Civil No. 3:19cv144 (DJN) |
| SOUTHSIDE PHYSICIAN<br>NETWORK, LLC, *et al.*,<br>  Defendants. | ) <br> ) <br> ) <br> ) <br> ) | |

## MEMORANDUM OPINION

Plaintiff Michael N. Wood ("Plaintiff") brings this action against Defendants Southside

Physician Network, LLC ("SPN"), and Joseph D. Wilkins ("Wilkins") (collectively,

"Defendants"), alleging that Defendants breached written and oral contracts with him by

providing only 120 days' notice when terminating his employment. Plaintiff further alleges that

Defendants committed actual and constructive fraud by misrepresenting the terms of his

employment. This matter comes before the Court by consent of the parties pursuant to 28 U.S.C.

§ 636(c)(1) on Defendants' Motion to Dismiss (ECF No. 11), moving this Court pursuant to

Federal Rules of Civil Procedure 12(b)(6) and 9(b) to dismiss Counts I and II of Plaintiff's

Complaint as to Wilkins and Counts III and IV as to both Defendants.[1] For the reasons set forth

---

[1]     The Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because Plaintiff — a resident of Alabama — and Defendants — residents of Delaware or Tennessee (SPN) and Virginia (Wilkins) — constitute completely diverse parties and the amount in controversy exceeds $75,000. (Compl. (ECF No. 1) ¶¶ 2-5, Prayer for Relief; *see also* Resp. of Def. Southside Physician Network, LLC to Order Dated July 24, 2019 (ECF No. 28) ¶¶ 1-3 (certifying that SPN's sole member is Virginia Hospital Company, LLC, whose sole member is Community Health Systems, Inc., a Delaware corporation with its principal place of business in Tennessee); Def. Joseph D. Wilkin's Answer (ECF No. 20) ¶ 5 (admitting that Wilkins is a resident of Virginia).)

below, the Court GRANTS Defendants' Motion to Dismiss (ECF No. 11) and DISMISSES WITH PREJUDICE Counts I and II of Plaintiff's Complaint as to Wilkins and Counts III and IV as to both Defendants.

## I.    BACKGROUND

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept Plaintiff's well-pleaded factual allegations as true, though the Court need not accept Plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Based on this standard, the Court accepts the following facts.

### A.    Contract Negotiation and Plaintiff's Employment

On April 22, 2014, Wilkins and Anne T. Fereday ("Fereday") held a conference call with Plaintiff, inviting Plaintiff to operate the open-heart surgery program at Southside Regional Medical Center ("Southside Regional" or the "Hospital") in Petersburg, Virginia. (Compl. (ECF No. 1) ¶¶ 2, 40.)[2] At that time, Wilkins served as the Assistant Chief Executive Officer ("CEO") of Southside Regional and Fereday served as the Hospital's Cardiovascular Service Line Director. (Compl. ¶¶ 6-7.) Following his phone call with Wilkins and Fereday, Plaintiff engaged in a lengthy contract negotiation with Wilkins and Southside Regional's CEO at the time, Doug Moyer ("Moyer"). (Compl. ¶ 7.)

Following the parties' negotiations, on June 5, 2014, Plaintiff received a written offer from Southside Regional, which included, among other provisions, a base salary of $650,000, $25,000 in relocation assistance and an option to terminate the agreement without cause with 120 days' notice. (Compl. ¶ 8.) Unsatisfied with the terms of Southside Regional's initial offer,

---

[2]    Unless otherwise noted, the Court references those paragraphs of Plaintiff's Complaint under the "Facts" heading.

Plaintiff asked Wilkins to increase his relocation assistance to $30,000, increase the notice required for Southside Regional to terminate his employment without cause to 180 days and reduce the number of on-call weekends to which he would be assigned. (Compl. ¶¶ 9-14.)

In response, on July 29, 2014, Wilkins sent Plaintiff an email confirming amendments to Southside Regional's initial offer, including: (1) an increase in relocation assistance to $30,000; (2) an expansion of Southside Regional's ability to terminate the agreement without cause after twelve months; (3) an increase in the notice period for termination without cause from 120 days to 180 days; and, (4) a decrease of Plaintiff's on-call weekend assignments to thirty-five weekends annually. (Compl. ¶ 15.) Wilkins attached the revised agreement to the offer email and informed Plaintiff that Southside Regional would hold the offer open until August 6, 2014. (Compl. ¶ 16.)

On August 6, 2014, Plaintiff accepted Southside Regional's revised offer, memorializing his acceptance with a cover letter reiterating the terms of the agreement. (Compl. ¶ 17.) Plaintiff signed the cover letter and initialed the bottom righthand corner of each page of the agreement that followed. (Compl. ¶ 18.) The parties made no further alterations to the agreement, and Southside Regional returned it to Plaintiff on August 6, 2014. (Compl. ¶ 19.) On September 1, 2014, Plaintiff began working at Southside Regional. (Compl. ¶ 20.)

### B.    Plaintiff's Termination

In the spring of 2015, following a reorganization, Wilkins left Southside Regional for another health system, and Trent Nobles ("Nobles") became chief operating officer of the Hospital. (Compl. ¶ 22.) In October 2016, Moyer announced his resignation as CEO of Southside Regional effective November 14, 2016, and Nobles became interim CEO. (Compl. ¶ 23.) A year later, on October 3, 2017, Southside Regional notified Plaintiff that it had decided to

close the open-heart surgery program. (Compl. ¶ 24.) The next day, Plaintiff contacted SPN's Director of Practice Operations, Joanne Austin ("Austin"), to request a copy of his signed employment contract, which Austin provided. (Compl. ¶¶ 25-26.)

A few days later, on October 8, 2017, Plaintiff realized that the employment contract provided by Austin, dated July 29, 2014 (the "120-Day Agreement"), contained different terms to the contract that he had accepted on August 6, 2014 (the "180-Day Agreement"). (Compl. ¶ 27.) Most notably, the 120-Day Agreement provided 120 days' notice for any no-cause termination, whereas the 180-Day Agreement provided 180 days' notice. (Compl. ¶ 36.) Plaintiff further realized that the 120-Day Agreement had signatures that did not match his signature on the 180-Day Agreement and, unlike the 180-Day Agreement, also lacked initials at the bottom righthand corner of each page. (Compl. ¶¶ 27, 36.) Plaintiff emailed Austin to inquire about these discrepancies, but received no response. (Compl. ¶ 27-28.)

On October 9, 2017, Southside Regional and SPN delivered written notice to Plaintiff that they had terminated his employment for no cause pursuant to the "Physician Employment Agreement Dated July 28, 2014." (Compl. ¶ 29.) SPN instructed Plaintiff to stop practicing by 5:00 p.m. on October 13, 2017. (Compl. ¶ 29.) In a separate notice, SPN requested repayment of a prorated portion of the $25,000.00 advance paid at the commencement of Plaintiff's employment, which totaled $9,548.33. (Compl. ¶ 29.)

In response, that same day, Plaintiff forwarded to Irene Buskey ("Buskey") — an employee with Southside Regional's Human Resources Department — the October 8, 2017 email he had sent to Austin concerning the discrepancies between the agreement on file with SPN and the agreement that he had signed in August 2014. (Compl. ¶ 30.) Plaintiff also worked with SPN, Southside Regional's Board of Directors and Nobles to develop transition care plans

for his patients. (Compl. ¶ 32.) Plaintiff ceased practicing at Southside Regional on October 13, 2017. (Compl. ¶ 34.)

Following his termination, on December 12, 2017, Plaintiff, through counsel, wrote to Nobles and Reginald Albert, Vice President of Physician Services at Southside Regional, notifying them of the discrepancy in notice periods between the 120-Day Agreement provided by SPN and the 180-Day Agreement Plaintiff had on file. (Compl. ¶ 35.) Plaintiff requested that SPN and Southside Regional correct the discrepancy by paying Plaintiff for the difference between the 120-day and 180-day notice periods. (Compl. ¶ 36.) To date, SPN and Southside Regional have paid Plaintiff only a 120-day separation payout, less the prorated portion of Plaintiff's commencement bonus. (Compl. ¶ 37.)

### C.    Plaintiff's Complaint

On March 6, 2019, Plaintiff filed suit in this Court against Defendants. (ECF No. 1.) Based on the above facts, Plaintiff's Complaint sets forth four counts for relief. (Compl. ¶¶ 39-83.) In Count I, Plaintiff alleges that Defendants breached the 180-Day Agreement by refusing to pay his salary for the full 180-day notice period. (Compl. ¶¶ 39-46.) Alternatively, in Count II, Plaintiff alleges that Defendants breached an oral contract with him by refusing to pay his salary for the full 180-day notice period. (Compl. ¶¶ 47-54.)

In Count III, Plaintiff alleges that Defendants committed actual fraud by knowingly allowing Plaintiff to work under the assumption that the 180-day notice period constituted a term of his employment and by placing a "fraudulent replication" of Plaintiff's signature of the 120-Day Agreement. (Compl. ¶¶ 57-72.) Finally, in Count IV, Plaintiff alleges that Defendants' actions constituted constructive fraud. (Compl. ¶¶ 74-83.)

Based on these Counts, Plaintiff seeks: (1) compensatory damages in the amount of $106,849.20, representing his salary for the sixty days' difference between the 120-day notice period in the 120-Day Agreement and the 180-day period in the 180-Day Agreement; (2) statutory interest; (3) $300,000 in punitive damages; (4) attorneys' fees and costs; and, (5) any such other relief as this Court may deem proper and just. (Compl. ¶¶ 45-46, 55-56, Prayer for Relief.)

### D.     Defendants' Motion to Dismiss

On June 7, 2019, Defendants filed their Motion to Dismiss, moving this Court pursuant to Rules 12(b)(6) and 9(b) to dismiss Counts I and II of Plaintiff's Complaint as to Wilkins and Counts III and IV as to both Defendants. (Mot. to Dismiss by Def. Wilkins & Partial Mot. to Dismiss by Def. Southside Physician Network, LLC ("MTD") (ECF No. 11) at 1.) In support of their Motion, Defendants contend that Plaintiff cannot maintain a cause of action against Wilkins under Counts I and II, because Wilkins negotiated Plaintiff's employment contract — either oral or written — as the agent of a disclosed principal and therefore cannot be held personally liable. (MTD at 2; Mem. of L. in Supp. of Mot. to Dismiss by Def. Wilkins & Partial Mot. to Dismiss by Def. Southside Physician Network, LLC ("Defs.' Mem.") (ECF No. 12) at 3-4.) As to Counts III and IV of Plaintiff's Complaint, Defendants argue that Plaintiff has failed to state a claim for actual or constructive fraud with sufficient particularity as required by Rule 9(b), or allege the reliance necessary to sustain a cause of action under either theory. (MTD at 2; Defs.' Mem. at 5-8.) Defendants add that Plaintiff's fraud claims must also fail under the economic loss doctrine, because Plaintiff's losses stem solely from a duty owed under contract. (MTD at 2; Defs.' Mem. at 8-9.)

On June 21, 2019, Plaintiff filed his Memorandum in Opposition to Defendants' Motion, (Mot. in Opp. to Def. Wilkins' Mot. to Dismiss & Def. Southside Physician Network, LLC's Partial Mot. to Dismiss ("Pl.'s Mem.") (ECF No. 14)), and, on June 27, 2019, Defendants filed their Reply, (Reply Br. in Supp. of Mot. to Dismiss by Def. Wilkins & Partial Mot. to Dismiss by Def. Southside Physician Network, LLC ("Defs.' Reply") (ECF No. 15)), rendering the matter now ripe for review.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.2d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable."

*Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III.   CHOICE OF LAW

As a threshold matter, the Court must determine the substantive law against which to measure the plausibility of Plaintiff's claims. Because Plaintiff's claims fall under state law, this Court, sitting in diversity, must apply the substantive law of the state in which it sits, including its choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Regarding Plaintiff's contract claims, Virginia follows the longstanding rule that "[t]he nature, validity and interpretation of contracts are governed by the law of the place where made," unless the parties express a contrary intent. *C.I.T. Corp. v. Guy*, 195 S.E. 659, 661 (Va. 1938). However, "if the parties merely sign [a] contract in one jurisdiction, but, at the time of execution, the parties intend for the contract to be fully performed in another, specific jurisdiction, the law of the place of performance . . . will be applied . . . ." *Black v. Powers*, 628 S.E.2d 546, 554 (Va. 2006) (citing *Arkla Mfg. Co. v. W. Va. Timber Co.*, 132 S.E. 840, 842 (Va. 1926) and *Poole v. Perkins*, 101 S.E. 240, 242 (Va. 1919)).

Here, Plaintiff hinges his right to relief in Count I on the 180-Day Agreement, which he executed in Texas. (*See* Compl. ¶¶ 10 (alleging that Plaintiff lived in Texas at the time of the contract negotiation), 17 (alleging that Plaintiff accepted Wilkins's July 29, 2014 offer via cover letter signed in Texas)); *see also O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000) ("The place of contracting is determined by the place where the final act necessary to

8

make the contract binding occurs."); *Madaus v. Nov. Hill Farm, Inc.*, 630 F. Supp. 1246, 1249 (W.D. Va. 1986) ("[T]he place of acceptance of a proposal is the place where a contract is made, since acceptance by the offeree completes the contract process.").[3] However, because the parties clearly intended at the time of execution that the 180-Day Agreement be performed in Virginia — the location of Southside Regional — the laws of Virginia will govern Count I of Plaintiff's Complaint. *Black*, 628 S.E.2d at 554. Virginia law also governs Count II, because Plaintiff alleges that the performance of his job constituted his acceptance of Wilkins's July 29, 2014 offer, and such performance occurred at Southside Regional in Virginia. (Compl. ¶¶ 48-49.)

Virginia law likewise governs Counts III and IV, because the fraud alleged in each count occurred in Virginia. In Virginia, both actual and constructive (or negligent) fraud sound in tort, *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 346-47 (Va. 1998), meaning "the place of the wrong (*lex loci delicti*) determines which State's substantive law" governs both causes of action, *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (emphasis supplied) (citing *McMillan v. McMillan*, 253 S.E.2d 662, 663 (Va. 1979)). In the fraud context, "the place of the wrong is where the loss is sustained . . . ." *Jordan v. Shaw Indus., Inc.*, 1997 WL 734029, at *3 (4th Cir. Nov. 26, 1997) (citations omitted). For Counts III and IV, Plaintiff's alleged losses occurred in Virginia when he did not receive separation pay for the 180-day notice period to which Defendants allegedly agreed. Thus, Virginia law governs Counts III and IV.

---

[3]     Notably, neither Plaintiff nor Defendants have produced a copy of the 180-Day Agreement or the 120-Day Agreement, so the Court must assume that both Agreements did not contain a choice-of-law provision.

## IV.    ANALYSIS

Plaintiff's Complaint raises four counts for relief.  Because Counts I and II present alternative theories of a breach-of-contract claim and Counts III and IV present alternative theories of a fraud claim, the Court will consider the four counts in those groupings.

### A.    Plaintiff Fails to State Plausible Claims Against Wilkins in Counts I and II.

As mentioned, Count I of Plaintiff's Complaint alleges that Defendants breached the 180-Day Agreement by refusing to pay his salary for the full 180-day notice period.  (Compl. ¶ 44.) Alternatively, in Count II, Plaintiff alleges that Defendants breached an oral contract with him by refusing to pay his salary for the full 180-day notice period.  (Compl. ¶¶ 47-54.)

Defendants argue that Plaintiff fails to state claims against Wilkins in Counts I and II, because Plaintiff's facts establish that he knew Wilkins served as an agent for SPN and Southside Regional.  (Defs.' Mem. at 3-4.)  Because Virginia law shields agents from personal liability for contracts entered into on behalf of a disclosed principal, and because Wilkins did not otherwise agree to be held personally liable, Defendants contend that Plaintiff fails to state a plausible right to relief against Wilkins in either Count I or Count II.  (Defs.' Mem. at 3-4.)

Plaintiff responds that he has pled sufficient facts to hold Wilkins personally liable under Counts I and II, because the facts show that Wilkins potentially acted beyond the scope of his authority by either never sharing the 180-Day Agreement with Southside Regional or by changing the terms of the 180-Day Agreement without Plaintiff's consent.  (Pl.'s Mem. at 3-5.) Plaintiff contends that it would be premature to dismiss Counts I and II against Wilkins at this juncture, because the parties should conduct discovery first to determine what happened to the 180-Day Agreement.  (Pl.'s Mem. at 4.)  Plaintiff adds that Wilkins should remain a party "to

answer why he would purport to offer employment and negotiate employment terms if he had no authority to do so." (Pl.'s Mem. at 5.)

In Virginia, it is well established that "[w]here an agent makes a full disclosure of the fact of his agency and the name of his principal, and contracts only as the agent of the named principal, he incurs no personal responsibility." *Richmond Union Pass. Ry. Co. v. New York Seabeach Ry. Co.*, 28 S.E. 573, 576 (Va. 1897) (citations omitted). Indeed, "the presumption is that [an agent] intends to bind only his principal, and the burden of proof is upon him who undertakes to establish the agent's personal liability." *Id.* However, the rule of non-liability has its limits. For one, "an agent may be personally liable on a contract where the principal is only partially disclosed." *Va. Broad. Corp. v. John Marks Assocs. Advert., Inc.*, 1990 WL 751405, at *2 (Va. Cir. Ct. Oct. 25, 1990). Moreover, agents working on behalf of disclosed principals may be held personally liable for contracts made "outside the scope of the agency relationship." *House v. Kirby*, 355 S.E.2d 303, 305 n.** (Va. 1987). That said, an "agent does not become personally liable on the contract [when the agent exceeds the scope of his authority], unless [the contract] contains apt words to charge him . . . but [the agent's] only liability in such cases is in an action for deceit or in an action for breach of his warranty of authority." *Lancaster v. Stokes*, 89 S.E. 85, 87 (Va. 1916) (citations and quotations omitted).

In support of Counts I and II, Plaintiff alleges, and the Court accepts as true, the following facts. After Wilkins and Fereday spoke with Plaintiff about directing Southside Regional's open-heart surgery program, Moyer and Wilkins negotiated Plaintiff's employment terms in their capacities as the CEO and Assistant CEO of Southside Regional. (Compl. ¶¶ 6-7.) On June 5, 2014, Plaintiff received an initial offer of employment, which he attributed to Southside Regional, not Wilkins. (Compl. ¶ 8.) After Plaintiff requested changes to the terms of

11

Southside Regional's initial offer, on July 29, 2014, Wilkins sent an email "confirming the changes, *which were approved by [Southside Regional]*." (Compl. ¶¶ 9-15 (emphasis added).) Wilkins's confirmation email explained to Plaintiff that Southside Regional, not Wilkins, would leave the amended offer open until August 6, 2014. (Compl. ¶ 16.) And, although Plaintiff alleges that Wilkins breached the 180-Day Agreement by refusing to pay his full salary for the 180-day notice period, (Compl. ¶ 44), Wilkins had already left his position at Southside Regional before SPN terminated Plaintiff's employment, (*see* Compl. ¶¶ 22 (alleging that Wilkins moved to another health system in spring 2015), 29 (alleging that SPN invoked the no-cause termination provision of his employment contract on October 9, 2017)).

The Court finds that Plaintiff's facts fail to establish a plausible right to relief against Wilkins in Counts I and II. Nothing in the facts alleged by Plaintiff establishes that Wilkins failed to disclose his role as an agent for Southside Regional and SPN. Indeed, Plaintiff all but concedes Wilkins's role as a mere messenger for the Hospital. (*See* Compl. ¶¶ 15 (alleging that Wilkins communicated the terms of Plaintiff's employment as "approved by [Southside Regional]"), 16 (alleging that Wilkins's July 29, 2014 email stated that Southside Regional, not Wilkins, would keep the offer open until August 6, 2014).)

As for Plaintiff's argument that Wilkins potentially exceeded his authority as an agent and may therefore be held personally liable, the Court finds such an argument unpersuasive. (Pl.'s Mem. at 3-4.) The facts alleged in Plaintiff's Complaint fail to support such a theory, and the Court will not permit Plaintiff to amend his Complaint through briefing. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy." (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)

and *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011))).

Indeed, even if the Court accepted Plaintiff's new theory of liability against Wilkins, Virginia law would not permit Plaintiff — who has presented no allegations or evidence that Wilkins otherwise agreed to be held personally liable — to recover against Wilkins on a cause of action for breach of contract. *See Lancaster*, 89 S.E. at 87 (explaining that, without evidence of an agreement by the agent to be held personally liable, the appropriate causes of action in cases in which an agent exceeds his authority would be a cause of action for "deceit" or a cause of action for breach of the agent's warranty of authority (citations omitted)).

Neither does the Court find persuasive Plaintiff's prudential arguments for preserving Counts I and II against Wilkins. (Pl.'s Mem. at 4-5.) Although Plaintiff contends that he "should be allowed to explore Wilkins'[s] capacity [as an agent] and find out why significant changes were made to his contract" through more discovery, (Pl.'s Mem. at 4), the Supreme Court developed the plausibility standard, in part, because discovery serves as an ineffective and uneconomical means to weed out groundless claims or to determine their plausibility in the first place, *see Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management . . . given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side . . . [and given that] the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching [the summary judgment or trial stages]." (citations and quotations omitted)); *Iqbal*, 556 U.S. at 678-79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Only if there exists a "reasonably founded hope that the

[discovery] process will reveal relevant evidence" will a court permit a near-plausible claim to stand. *Twombly*, 550 U.S. at 559 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (additional quotations omitted)). Here, because Plaintiff's alleged facts recognize that Wilkins worked as an agent for a disclosed principal, and because Wilkins could not be found personally liable on either a written or oral contract even if he exceeded the scope of his authority, the Court finds that no reasonably founded hope exists to sustain Counts I and II against Wilkins through discovery. Accordingly, Counts I and II must be dismissed as to Wilkins.

### B.      Plaintiff Fails to State Plausible Claims Against Both Defendants in Counts III and IV.

As mentioned, in Count III, Plaintiff alleges that Defendants committed actual fraud by knowingly allowing Plaintiff to work under the assumption that the 180-day notice period constituted a term of his employment and by placing a "fraudulent replication" of Plaintiff's signature of the 120-Day Agreement. (Compl. ¶¶ 57-72.) Alternatively, in Count IV, Plaintiff alleges that Defendants' actions constituted constructive fraud. (Compl. ¶¶ 74-83.)

Defendants argue that Plaintiff fails to state claims in Counts III and IV for three reasons. (Defs.' Mem. at 5-9.) First, Defendants contend that Plaintiff fails to plead actual or constructive fraud with sufficient particularity as required by Rule 9(b), leaving Defendants to guess "as to the contents, timing or damages associated with [the] false representations alleged [by Plaintiff]." (Defs.' Mem. at 5-6.) Second, Defendants maintain that Plaintiff's facts fail to establish the required elements of actual fraud in Count III, particularly the element of reliance. (Defs.' Mem. at 6-7.) Defendants likewise argue that Plaintiff has not alleged facts sufficient to sustain a plausible claim of constructive fraud in Count IV. (Defs.' Mem. at 7-8.) Finally, Defendants

contend that the economic loss doctrine bars Plaintiff's fraud claims, because Plaintiff has not alleged a harm beyond breach of a contractual duty. (Defs.' Mem. at 8-9.)

Plaintiff responds that he has pled sufficiently particular facts to support his claims of actual and constructive fraud. (Pl.'s Mem. at 5-10.) Regarding his actual fraud claim, Plaintiff argues that the facts in his Complaint plausibly allege either that Wilkins forged Plaintiff's signature on the 120-Day Agreement or that Defendants promised to provide 180 days' notice and never intended to abide by that promise. (Pl.'s Mem. at 8.) Plaintiff contends that he justifiably relied on Wilkins's representation regarding the 180-day notice period when he accepted the position at Southside Regional and moved with his family from Texas to Virginia. (Pl.'s Mem. at 8.)

Regarding his constructive fraud claim, Plaintiff argues that Defendants made a false representation of material fact when Wilkins sent the July 29, 2014 email that included a 180-day notice period as one of its terms. (Pl.'s Mem. at 9.) Plaintiff alleges that he reasonably relied on this representation when he moved to Virginia and began his employment at Southside Regional on the assumption that he would receive 180 days' notice should SPN terminate him without cause. (Pl.'s Mem. at 9-10.) Plaintiff adds that the economic loss doctrine does not preclude his fraud claims, because Defendants' duty to refrain from fraudulent acts stemmed not from their contractual obligations, but from tort law. (Pl.'s Mem. at 10-11.)

In Virginia, "[a] plaintiff asserting a cause of action for actual fraud bears the burden of proving by clear and convincing evidence the following elements: '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting in damage to the party misled.'" *Richmond Metro. Auth.*, 507 S.E.2d at 346 (quoting *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va.

15

1994)). Similarly, negligent misrepresentation, which Virginia courts also call constructive fraud, requires clear and convincing evidence "that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of . . . reliance upon the misrepresentation." *Mortarino v. Consultant Eng'g Servs.*, 467 S.E.2d 778, 782 (Va. 1996) (citing *Alequin*, 439 S.E.2d at 390).

Virginia further requires that the "duty tortiously or negligently breached" by a party committing actual or constructive fraud "be a common law duty, not one existing between the parties solely by virtue of [a] contract." *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va. 1991) (internal citations omitted); *see also Richmond Metro. Auth.*, 507 S.E.2d at 346 (entering summary judgment for a construction contractor who provided fraudulent progress reports to the plaintiff, because the contractor breached only duties assumed by contract). Accordingly, a plaintiff seeking relief for the breach of a contractual duty cannot also receive relief in tort without a corresponding common law duty. *Dunn Const. Co. v. Cloney*, 682 S.E.2d 943, 946 (Va. 2009); *see also Vanguard Military Equip. Corp. v. David B. Finestone Co.*, 6 F. Supp. 2d 488, 492 (E.D. Va. 1997) (explaining that to properly plead a cause of action in tort, "[t]he duty owed by [the defendant] to [the plaintiff] must be derived from some source of law other than *ex contractu*").

Relevant here, Federal Rule of Civil Procedure 9(b) requires a party claiming fraud or mistake to "state with particularity the circumstances constituting fraud or mistake," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Although Rule 9(b) permits a plaintiff to plead the conditions of a person's mind generally, a plaintiff may not "evade the less rigid — though still operative — strictures of Rule 8." *Iqbal*, 556 U.S. at 686-87. Ultimately, Rule 9(b) requires plaintiffs to plead with

particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citations omitted). A plaintiff must also plead "reasonable, detrimental reliance . . . with particularity." *Xia Bi v. McAuliffe*, 927 F.3d 177, 184 (4th Cir. 2019) (citations omitted) (explaining that the rationale behind Rule 9(b)'s heightened pleading standard "applies with special force to allegations of reliance, which inherently rest on information within a plaintiff's possession"). Rule 9(b) seeks "to provide defendants with fair notice of claims against them and the factual ground upon which they are based . . . ." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013). Thus, "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison*, 176 F.3d at 783 n.5.

Here, in support of Counts III and IV, Plaintiff alleges that, following his rejection of Southside Regional's initial offer and negotiation of more favorable terms of employment, on July 29, 2014, Wilkins emailed Plaintiff with revised terms approved by Southside Regional, including a 180-day notice period for termination of Plaintiff's employment without cause. (Compl. ¶¶ 8-15.) On August 6, 2014, Plaintiff agreed to Defendants' July 29, 2014 offer by signing a cover letter memorializing the terms of that offer, including the 180-day notice period, and initialing the bottom righthand corner of each page of the employment agreement that Wilkins had attached to the July 29, 2014 email. (Compl. ¶¶ 16-18.) Wilkins knew about Plaintiff's August 6, 2014 acceptance of the revised terms, including the 180-day notice provision. (Compl. ¶¶ 63, 76.) Wilkins also knew that Plaintiff had rejected the 120-day notice period initially offered by SPN/Southside Regional. (Compl. ¶¶ 8-9, 65.) After agreeing to the

terms presented by Wilkins in his July 29, 2014 email, Plaintiff relocated from Texas to Virginia and began working at Southside Regional. (Compl. ¶ 20.)

While employed at Southside Regional, Plaintiff requested copies of his employment contract from Wilkins but did not receive a response. (Compl. ¶¶ 61-62.) After Southside Regional informed Plaintiff that it intended to close the open-heart surgery program, in October 2017, Plaintiff asked for a copy of his employment contract and realized that the employment contract provided by Southside Regional that purported to show his signature (i.e., the 120-Day Agreement) contained a provision providing only a 120-day notice period for no-cause terminations. (Compl. ¶¶ 24-27.) Plaintiff did not recognize his signature on the 120-Day Agreement, and each page of the 120-Day Agreement lacked his initials. (Compl. ¶ 27.) Defendants did not provide an explanation for the discrepancy between the 120-Day Agreement on file with the Hospital and the 180-Day Agreement to which Plaintiff had agreed. (Compl. ¶ 70.) SPN subsequently paid Plaintiff only a 120-day separation payout. (Compl. ¶ 37.)

Plaintiff's facts support three conceivable theories of liability. First, Plaintiff contends that the facts alleged support a theory that Defendants committed fraud in the inducement by representing that SPN agreed to the 180-day notice period with no intention of abiding by that agreement. *See Jordan v. Walker*, 78 S.E. 643, 645 (Va. 1913) (holding that fraud in the inducement of a contract constitutes grounds for a cause of action at common law); (Pl.'s Mem. at 8). Alternatively, Plaintiff alleges that Wilkins fraudulently placed Plaintiff's signature on the 120-Day Agreement, which SPN then misrepresented as the final agreement between the parties. (Compl. ¶¶ 69, 78-79, 83; Pl.'s Mem. at 8.) And, finally, Plaintiff alleges that Defendants committed actual or constructive fraud by permitting him to work under the assumption that he had a right to 180 days' notice while knowing that the 120-Day Agreement controlled the terms

of his employment. (Compl. ¶¶ 67, 71-73, 81-82.) None of the theories set forth by Plaintiff

support a plausible right to relief against either Defendant in Counts III and IV.

For one, Plaintiff fails to allege sufficient facts to plausibly claim that Defendants

intended not to provide him with 180 days' notice when Wilkins offered the 180-day notice

period as a term of Plaintiff's employment. *See Sea-Land Service, Inc. v. O'Neal*, 297 S.E.2d

647, 651 (Va. 1982) (explaining that generally an action for fraud cannot be sustained based on

promises to perform future acts, with the exception of promises made "'with a present intention

not to perform them'" (quoting Restatement (Second) of Torts § 530 cmt. c (Am. Law Inst.

1977))). Notably, Plaintiff does not allege that the 180-day notice period constituted some

external fact not included in the terms of the agreement attached to Defendants' July 29, 2014

offer email. In fact, Plaintiff alleges that the final agreement attached to the offer email included

all of Plaintiff's requested revisions, including the 180-day notice period. (Compl. ¶ 16.) Thus,

no misrepresentation occurred when Wilkins sent the July 29, 2014 email outlining the final

agreement, because Plaintiff could check — and, in fact, alleges that he did check — the veracity

of Wilkins's email against the final terms in the attached agreement. *See Costello v. Larsen*, 29

S.E.2d 856, 858 (Va. 1944) ("Where ordinary care and prudence are sufficient for full protection,

it is the duty of the party to make use of them. Therefore, if false representations are made

regarding matters of fact, and the means of knowledge are at hand and equally available to both

parties . . . the law, in general, will leave [a party who trusts the representations of the other party

over the terms of the contract] where he has been placed by his own imprudent confidence."

(internal quotations omitted)). Conversely, if the 120-Day Agreement constitutes the final

agreement between the parties, such an agreement does not exist because of Defendants' alleged

misrepresentation in the July 29, 2014 email, for Plaintiff's own facts assert that both Wilkins's

email and the attached agreement that Plaintiff signed contained the 180 days' notice provision. (Compl. ¶ 16.) Accordingly, if the 120-Day Agreement controls, Defendants did not induce Plaintiff's assent to that Agreement by misrepresenting the notice period for no-cause terminations.

In support of Counts III and IV, Plaintiff also relies on the possibility that Wilkins placed Plaintiff's signature onto the 120-Day Agreement without Plaintiff's knowledge or assent and knowing that Plaintiff had expressly rejected the 120-day notice period. (Compl. ¶¶ 65, 77.) However, such a possibility also fails to support a cause of action for actual or constructive fraud. Although Plaintiff's allegations may support an argument that the parties never agreed to the 120-Day Agreement, because the parties had no meeting of the minds, *see* Restatement (Second) of Contracts § 163 cmt. a (Am. Law Inst. 2019) ("[W]here a misrepresentation goes to what is sometimes called the 'factum' or the 'execution' rather than merely the 'inducement' [of a contract] . . . there is no effective manifestation of assent and no contract at all."); *see also Armfield v. Smith*, 1989 WL 646368, at *1 (Va. Cir. Ct. Aug. 30, 1989) (holding that reformation may be used in cases of fraud in the factum to correct a contract that does not reflect the parties' original meeting of the minds), Plaintiff's allegations do not support a plausible theory that Wilkins's placement of Plaintiff's signature on the 120-Day Agreement constituted a misrepresentation on which Plaintiff justifiably relied to his detriment. Indeed, Plaintiff did not discover his purported signature on the 120-Day Agreement until October 2017, at which point his alleged reliance — moving to Virginia to work for SPN/Southside Regional — had already occurred. (Compl. ¶¶ 20, 24-27.) And Plaintiff alleges that he knew or highly suspected that his purported signature on the 120-Day Agreement was illegitimate, so any supposed reliance following his receipt of the 120-Day Agreement would be unjustifiable. (Compl. ¶ 27); *see also*

*Murayama v. NISC Holdings*, 2011 WL 7575011, at *5 (Va. Cir. Ct. Feb. 14, 2011) ("[I]f a party claiming fraud was given information that would arouse the suspicions of an ordinary person, he is under a duty to investigate and cannot reasonably rely on the representations or silence of the other party" (citations omitted)); Restatement (Second) of Torts § 541 cmt. a (Am. Law Inst. 2019) ("[T]he recipient of a fraudulent misrepresentation . . . cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation."). In fact, upon discovering the suspicious signature on the 120-Day Agreement, Plaintiff challenged the veracity of the Agreement through emails to Southside Regional employees and a letter sent by his counsel on December 12, 2017, demonstrating that Plaintiff did not rely on SPN's representation that the 120-Day Agreement constituted the final agreement between the parties. (Compl. ¶¶ 27, 30, 35-36.)

The Court likewise finds no plausible right to relief under Plaintiff's third theory: that Defendants committed actual or constructive fraud by permitting Plaintiff to work under the assumption that he had a right to 180 days' notice while knowing that the 120-Day Agreement controlled the terms of his employment. (Compl. ¶¶ 67, 81.) In Virginia "[c]oncealment of a material fact by one who knows that the other party is acting on the assumption that the fact does not exist constitutes actionable fraud." *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 597 (Va. 1984) (citing *Clay v. Butler*, 112 S.E. 697, 700 (Va. 1922)). To be liable for actual fraud under a concealment theory, the party charged with actual fraud must "*intentionally* and *knowingly*" conceal a material fact. *Va. Nat. Gas Co. v. Hamilton*, 457 S.E.2d 17, 21 (Va. 1995) (emphasis added). Because concealment requires intentionality, concealment cannot sustain a cause of action for constructive fraud, which requires negligent or innocent misrepresentation; however, a

21

party may be liable for constructive fraud when the party had a duty to disclose information and failed to do so, leading to justifiable and detrimental reliance by the other party. *See Nationwide Mut. Ins. Co. v. Hargraves*, 405 S.E.2d 848, 851 (Va. 1991) (holding that Nationwide could proceed on a constructive fraud claim by submitting to a jury whether Hargraves had a duty to inform Nationwide about a nondisclosed fact and whether that nondisclosure constructively defrauded Nationwide).

Plaintiff's facts fail to establish a plausible claim of fraud by concealment or nondisclosure. If Plaintiff's allegations prove true and the 180-Day Agreement controls, Plaintiff did not detrimentally rely on a false assumption that Defendants either intentionally or negligently failed to correct. To the contrary, Plaintiff's assumption regarding the 180-day notice period would be the correct assumption and Defendants would be the mistaken parties. Conversely, if the 120-Day Agreement controls, Plaintiff's assumptions to the contrary would be unjustified, for Plaintiff would have assented to the terms of that Agreement and could read it to correct any false assumptions.[4] *See Johnson v. Washington*, 559 F.3d 238, 245 (4th Cir. 2009) (rejecting the plaintiffs' fraud claim, because "the documents that they signed plainly stated the terms of the transaction and more than corrected any misleading oral statements" (citations omitted)). Neither has Plaintiff alleged that Defendants intentionally diverted his attention from the 120-day provision. Although Plaintiff alleges that Defendants did not provide him with a copy of the 120-Day Agreement until October 2017, (Compl. ¶¶ 61-62), Plaintiff also alleges that he possessed a copy of the parties' true and valid final agreement (i.e., the 180-Day

---

[4]     Of course, Plaintiff alleges that he did not know about the 120-Day Agreement until October 2017. (Compl. ¶¶ 25-26.) Thus, accepting Plaintiff's facts as true, Plaintiff never assented to the 120-Day Agreement, because he did not know of its existence, meaning the 180-Day Agreement controls. Plaintiff has not alleged that Defendants misrepresented the terms of the 180-Day Agreement and therefore cannot sustain his fraud claims under the facts alleged.

Agreement) from the inception of his employment, (*see* Compl. ¶ 19 (alleging that SPN returned the executed 180-Day Agreement to him on August 6, 2014)). And Plaintiff fails to allege that Defendants had any duty to disclose the 120-day notice provision. Indeed, if the 120-Day Agreement controls, Plaintiff would have been equally obliged to understand the terms of that Agreement. *Costello*, 29 S.E.2d at 858. If anything, Plaintiff's arguments concerning Defendants' nondisclosure or concealment of the 120-day notice provision represent potential defenses against the validity of the 120-Day Agreement, *see* Restatement (Second) of Contracts §§ 160-61 (Am. Law Inst. 2019) (describing when concealment or nondisclosure permits avoidance of a contract), but such arguments do not sustain a cause of action for fraud.

Ultimately, Plaintiff's allegations boil down to which agreement constituted the final agreement between the parties. Regardless of which agreement controls, Plaintiff fails to allege sufficient facts to render plausible his causes of action for actual and constructive fraud. Accordingly, the Court must dismiss Counts III and IV as to both Defendants.

## V.    CONCLUSION

For the reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss (ECF No. 11) and DISMISSES WITH PREJUDICE Counts I and II of Plaintiff's Complaint as to Wilkins and Counts III and IV as to both Defendants.[5] An appropriate Order shall issue.

---

[5]     Dismissal with prejudice constitutes the appropriate action in this case, because any amendments to Plaintiff's facts would be futile, as no set of facts can cure the implausibilities and legal deficiencies noted by this Court. *See Conner v. Nucor Corp.*, 2015 WL 5785510, at *5 (D.S.C. Sept. 30, 2015) (finding dismissal with prejudice appropriate where "[a]mendment of the factual assertions in the Complaint would not cure the legal deficiency at issue and would be futile" (quotations and citations omitted)); *see also Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1066-67 (4th Cir. 1993) (holding that to determine whether an order dismissing claims pursuant to Rule 12(b)(6) constitutes an appealable final order, courts should consider whether "the plaintiff could save his action by merely amending his complaint").

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: July 29, 2019